CULPEPPER IP, PLLC
Kerry S. Culpepper, Bar No. 9837
75-5737 Kuakini Highway, Suite 102
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 322-3389
Facsimile:   (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Plaintiffs
ME2 Productions, Inc.
Venice PI, LLC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| ME2 Productions, Inc., and Venice PI, LLC | ) ) ) | **Case No.: 1:17-cv-00320-RLP-NONE** |
|---|---|---|
| Plaintiffs, | ) ) | (Copyright) |
| vs. | ) ) | **FIRST AMENDED COMPLAINT; EXHIBITS 1-4** |
| Jeb Balubar, | ) ) | |
| Defendant. | ) ) ) ) ) ) | **(1) DIRECT COPYRIGHT INFRINGEMENT**<br><br>**(2) CONTRIBUTORY COPYRIGHT INFRINGEMENT** |

FIRST AMENDED COMPLAINT

First Plaintiff ME2 Productions, Inc. (hereafter: "ME2") and Second Plaintiff

Venice PI, LLC (hereafter: "Venice") (collectively "Plaintiffs") file this First

Amended Complaint against now identified Defendant Joe Balubar ("Defendant")

and allege as follows:

## I. NATURE OF THE ACTION

1. This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the Copyright Act").

2. The Plaintiffs allege that Defendant is liable for: (1) direct copyright infringement in violation of 17 U.S.C. §§ 106 and 501; and, (2) contributory copyright infringement.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4. Defendant (as shown in Exhibit "1") either resides in, solicits, transacts, or is doing business within this jurisdiction, and has committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that his acts would cause injury in this jurisdiction. As such, Defendant has sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over him.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) the Defendant resides, and therefore can be

20-003H

found, in this State. Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendant or Defendant's agent resides or may be found in this District.

### III. PARTIES

### A. The First Plaintiff, ME2 Productions, LLC

6. The Plaintiff ME2 Productions Inc. (ME2) is a corporation organized and existing under the laws of the State of Nevada.

7. ME2 is an affiliate of Millennium Funding, Inc., a production company and distributor of a notable catalog of major motion pictures. (www.millenniumfilms.com).

8. ME2 is the owner of the copyright for the motion picture in the Work "*Mechanic: Resurrection*" (hereafter: the "First Work") a major motion picture released in 2016 as shown in Exhibit "2".

9. The First Work is the sequel to the highly successful 2011 film "*The Mechanic*". The First Work is a major production with notable actors, a national advertising campaign and a significant opening release in over 2,200 screens, promoted in part by its web site: http://www.mechanic.movie.

### B. The Second Plaintiff, Venice PI, LLC.

10. The Plaintiff Venice PI, LLC ("Venice") is a limited liability company organized under the laws of California with principal offices in Los Angeles,

California.

11. Venice is an affiliate of Voltage Pictures, a production company with a notable catalog of major motion pictures. (www.voltagepictures.com).

12. Venice is the owner of the copyright for the motion picture in the Work "*Once Upon a Time in Venice*", (hereafter: the "Second Work") a major motion picture released in June of 2017 as shown in Exhibit "3".

13. The Second Work is about a private investigator who must follow a bizarre and comic path to recover his stolen dog.

### C. The Defendant

14. Previously identified as Defendant Doe 2, First Plaintiff has discovered that Defendant Jeb Balubar is the individual at IP address 204.210.105.89 who shared a copy and thereby infringed the Plaintiff's copyrighted First Work on 7/5/2017.

15. The Internet Service Provider for IP address 204.210.105.89 is Charter Communications.

16. Charter Communications indicated that the named subscriber for IP address 204.210.105.89 was Arlene Balubar from 6/7/2012 01:17 to 8/3/2017 (UTC).

20-003H

17. The daughter of the named Subscriber of the Internet service of IP address 204.210.105.89 indicated that her brother (the Defendant) used a hardware device such as the Kodi device with add-on software to watch movies.

18. The Defendant installed or had installed a BitTorrent client application on his mobile device so that his family and Defendant could watch pirated content.

19. The Defendant has been observed sharing nearly 13 contents at the IP address. *See* Exhibit "4".

20. Second Plaintiff has discovered that Defendant shared a copy and thereby infringed the Second Work on 7/21/2017.

21. Defendant knowingly and willingly used this IP address to illegally republish and illegally distribute copies of the Plaintiffs' Works to an unknown number of other individuals over the Internet.

22. Defendant is either a direct or contributory infringer all as more particularly described below.

## IV.   JOINDER

23. Pursuant to Fed. R. Civ. P. 20(a)(1), each of the Plaintiffs are properly joined because, as set forth in detail above and below, the Plaintiffs assert: (a) a right to relief arising out of the same transaction, occurrence, or series or transactions, namely the use of BitTorrent at the Defendant's IP address; and (b) that there are common questions of law and fact.  The Defendant used the same internet service,

the same BitTorrent client applications and same hardware devices to download and distribute each of Plaintiffs' motion pictures in the same way.

## V. FACTUAL BACKGROUND

### A. *The Plaintiffs Own the Copyrights to the Works*

24. The Plaintiff ME2 is the owner of the copyright in the First Work. The First Work is the subject of a copyright registration (Registration Number PA 1-998-057), and this action is brought pursuant to 17 U.S.C. § 411. *See* Exhibit "2".

25. The Plaintiff Venice is the owner of the copyright in the Second Work, which is the subject of copyright registration (Registration Number PA 2-039-391) for the motion picture, and this action is brought pursuant to 17 U.S.C. § 411. *See,* Exhibit "3".

26. The Works are motion pictures currently offered for sale in commerce.

27. Defendant had notice of Plaintiffs' rights through at least the credits indicated in the content of the motion picture which bore a proper copyright notice.

28. Defendant also had notice of Plaintiffs' rights through general publication and advertising associated with the motion picture, and packaging and copies, each of which bore a proper copyright notice

### B. *The Defendant Used BitTorrent To Infringe the Plaintiffs' Copyrights*

29. BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts

of data.

30.     The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

### *1. Defendant Installed a BitTorrent Client onto his Computer*

31.     A BitTorrent "Client" is a software program that implements the BitTorrent Protocol.  There are numerous such software programs which can be directly downloaded from the Internet.

32.     Once installed on a computer, the BitTorrent "Client" serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

33.     Defendant installed a BitTorrent Client onto his or her computer.

### *2. The Initial Seed, Torrent, Hash and Tracker*

34.     A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

35. The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

36. The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

37. When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

38. Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

39. The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

40. The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the

copyrighted Works, on them and facilitates the exchange of data among the computers.

41. Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

### *3. Torrent Sites*

42. "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol. There are numerous torrent websites.

43. Upon information and belief, Defendant went to a torrent site to upload and download Plaintiffs' copyrighted Works.

### *4. Uploading and Downloading a Work Through a BitTorrent Swarm*

44. Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Works) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

45. The BitTorrent protocol causes the initial seed's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

46. Once a peer receives a piece of the computer file, here a piece of the

9

copyrighted Works, it starts transmitting that piece to the other peers.

47. In this way, all of the peers and seeders are working together in what is called a "swarm."

48. Here, Defendant peer member participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

49. In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

50. Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

**5. *The Plaintiffs' Computer Investigators Identified the Defendant's IP Addresses as Participants in a Swarm That Was Distributing the Plaintiffs' Copyrighted Works***

51. The Plaintiffs retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the internet to reproduce, distribute, display or perform the Plaintiffs' copyrighted Works.

52. MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

53. MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of: SHA1: B4A81D27B29589DD704A84498780ED183F12EB69 (the "Unique Hash Number") for the First Work.

54. The IP addresses, Unique Hash Number, and hit dates contained on Exhibit "1" accurately reflect what is contained in the evidence logs, and show: (1) that Defendant had copied a piece of the First Plaintiff's copyrighted; (2) the Work identified by the Unique Hash Number.

55. The Defendant's computer used the identified IP addresses to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

56. MEU's agent analyzed each BitTorrent "piece" distributed by each IP

20-003H

address listed on Exhibit "1" and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the First Work.

57. MEU's agent viewed the Work side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

58. MEU's agent noted that a tracker computer was directing to the IP address of Defendant as having particular pieces of the Second Work.

## VI. FIRST CLAIM FOR RELIEF
**(Copyright Infringement)**

59. Plaintiffs re-allege and incorporates by reference the allegations contained in each of the foregoing paragraphs.

60. Plaintiffs are the copyright owners of the Works which each contains an original work of authorship.

61. By using the BitTorrent protocol and a BitTorrent Client and the processes described above, Defendant copied the constituent elements of the registered Works that are original.

62. The Plaintiffs did not authorize, permit, or provide consent to the Defendant to copy, reproduce, redistribute, perform, or display their Works.

63. As a result of the foregoing, Defendant violated the Plaintiffs' exclusive right to: (A) Reproduce the Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501; (B) Redistribute copies of the Works to the public by sale or other transfer of

ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501; (C) Perform the copyrighted Works, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Works' images; and, (D) Display the copyrighted Works, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Works non-sequentially and transmitting said display of the Works by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display.)

64. Defendant's infringement was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

65. By engaging in the infringement alleged in this Complaint, the Defendant deprived not only the producers of the Works from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of each film, numerous owners of local theaters and retail outlets in Hawaii and their employees, and, ultimately, the local economy. The Defendant's misconduct therefore offends public policy.

66. The Plaintiffs have suffered damages that were proximately caused by the Defendant's copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

**VII. SECOND CLAIM FOR RELIEF**
**(Contributory Copyright Infringement)**

20-003H

67. Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

68. By participating in the BitTorrent swarm with others, Defendant induced, caused or materially contributed to the infringing conduct of others.

69. The Plaintiffs did not authorize, permit, or provide consent to the Defendant inducing, causing, or materially contributing to the infringing conduct of others.

70. Defendant knew or should have known that the other BitTorrent users in a swarm with it were directly infringing the Plaintiffs' copyrighted Work by copying constituent elements of the registered Work that are original. Indeed, Defendant directly participated in and therefore materially contributed to infringing activities of others.

71. Defendant's infringement was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

72. By engaging in the contributory infringement alleged in this Complaint, the Defendant deprived not only the producer of the Works from income that could have been derived when these films were shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of these films, numerous owners of local theaters and retail outlets in Hawaii and their employees, and, ultimately, the local economy. The Defendant's misconduct

therefore offends public policy.

73.     The Plaintiffs have suffered damages that were proximately caused by the Defendant's contributory copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

WHEREFORE, the Plaintiffs respectfully requests that this Court:

(A) permanently enjoin Defendant from continuing to infringe the Plaintiff's copyrighted Work;

(B) order that Defendant delete and permanently remove the torrent files relating to the Plaintiffs' copyrighted Works from each of the computers under Defendant's possession, custody, or control;

(C) order that Defendant delete and permanently remove the copy of the Works Defendant has on the computers under the Defendant's possession, custody, or control;

(D) award the Plaintiffs' statutory damages per Work pursuant to 17 U.S.C. § 504-(a) and (c);

(E) award the Plaintiffs their reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) grant the Plaintiffs any and all other and further relief that this Court deems just and proper.

DATED: Kailua-Kona, Hawaii, November 22, 2017.

20-003H

CULPEPPER IP, PLLC

 /s/ Kerry S. Culpepper 
Kerry S. Culpepper

Attorney for Plaintiffs
ME2 Productions, Inc.
Venice PI, LLC

20-003H