CULPEPPER IP, PLLC
Kerry S. Culpepper, Bar No. 9837
75-5737 Kuakini Highway, Suite 102
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 322-3389
Facsimile:   (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Plaintiffs
ME2 Productions, Inc. and
Venice PI, LLC

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ME2 Productions, Inc., and Venice PI, LLC | **Case No.: 1:17-cv-00320-RLP-NONE** |
| Plaintiffs, | (Copyright) |
| vs. | |
| Dragon Media, Inc. d/b/a Dragon Box, Paul Christoforo, John Doe, and Jev Balubar | **THIRD AMENDED COMPLAINT; EXHIBITS 1-3** |
| | **(1) DIRECT COPYRIGHT INFRINGEMENT** |
| Defendants. | **(2) CONTRIBUTORY COPYRIGHT INFRINGEMENT** |

## THIRD AMENDED COMPLAINT

First Plaintiff ME2 Productions, Inc. (hereafter: "ME2") and Second Plaintiff

Venice PI, LLC (hereafter: "Venice") (collectively "Plaintiffs") file this Third

Amended Complaint against Defendants Dragon Media, Inc. d/b/a Dragon Box

(hereafter: "Dragon Box"), Paul Christoforo, John Doe and Jev Balubar (collectively "Defendants") and allege as follows:

## I.    NATURE OF THE ACTION

1.    This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the Copyright Act").

2.    The Plaintiffs allege that Defendants are liable for: (1) direct copyright infringement in violation of 17 U.S.C. §§ 106 and 501; and, (2) contributory copyright infringement.

## II.    JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.    Defendants Dragon Box, Paul Christoforo and John Doe solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction.

5.    Defendants Dragon Box and Paul Christoforo have indirectly or directly engaged John Doe, as well as many others, as official resellers and authorized distributors of Dragon Box devices and affiliates of Dragon Media Inc in this District.  Particularly, upon information and belief, Defendants Dragon Box and

20-003H

Paul Christoforo have engaged Shishi Nainai Entertainment, a business residing in Honolulu, Hawaii, as an official reseller and authorized distributor of Dragon Box devices. *See* https://www.facebook.com/bluestarclothing accessed on January 15, 2018.  As such, Defendants Dragon Box, Paul Christoforo and John Doe have sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over them.

6.     Defendant Jev Balubar (as shown in Exhibit "1") either resides in, solicits, transacts, or is doing business within this jurisdiction, and has committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that his acts would cause injury in this jurisdiction.  As such, Defendant Jev Balubar has sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over him.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) the Defendant Jev Balubar and Defendant John Doe reside, and therefore can be found, in this State.  Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendant Jev Balubar and Defendant John Doe or Defendant Jev Balubar and Defendant John Doe's agent resides or may be found in this District.

### III.   PARTIES

20-003H

## A.   The First Plaintiff, ME2 Productions, LLC

8.      The Plaintiff ME2 Productions Inc. (ME2) is a corporation organized and existing under the laws of the State of Nevada.

9.      ME2 is an affiliate of Millennium Funding, Inc., a production company and distributor of a notable catalog of major motion pictures. (www.millenniumfilms.com).

10.     ME2 is the owner of the copyright for the motion picture in the Work "*Mechanic: Resurrection*" (hereafter: the "First Work") a major motion picture released in 2016 as shown in Exhibit "2".

11.     The First Work is the sequel to the highly successful 2011 film "*The Mechanic*". The First Work is a major production with notable actors, a national advertising campaign and a significant opening release in over 2,200 screens, promoted in part by its web site: http://www.mechanic.movie.

## B.   The Second Plaintiff, Venice PI, LLC.

12.     The Plaintiff Venice PI, LLC ("Venice") is a limited liability company organized under the laws of California with principal offices in Los Angeles, California.

13.     Venice is an affiliate of Voltage Pictures, a production company with a notable catalog of major motion pictures.  (www.voltagepictures.com).

14.     Venice is the owner of the copyright for the motion picture in the Work

20-003H

"*Once Upon a Time in Venice*", (hereafter: the "Second Work") a major motion picture released in June of 2017 as shown in Exhibit "3".

15.     The Second Work is about a private investigator who must follow a bizarre and comic path to recover his stolen dog.

## C.   The Defendants

16.     Defendant Dragon Media Inc. is a corporation duly incorporated under the laws of the State of California with its principal place of business at 2740 Circulo Santiago, Carlsbad, CA 92008. Defendant Dragon Media Inc. does business under the name Dragon Box and operates an interactive website http://www.thedragonbox.com/ as of January 15, 2018.

17.     Defendant Paul Christoforo is the president, owner, and operator of Dragon Media Inc and, upon information and belief, a resident of Carlsbad, California.

18.     Defendant Paul Christoforo controls, participates in, exercises control over, or benefits from the infringement of Defendant Dragon Media Inc. and Defendant John Doe as discussed below.

19.     Defendant John Doe is one of many official resellers and authorized distributors of Dragon Box devices and affiliates of Dragon Media Inc. residing in Hawaii.  Shishi Nainai is one such official reseller.  At the Facebook site of Shishi

20-003H

Nainai the Dragon box is advertised as "onsale now $250" as recently as January 15, 2018. *See* https://www.facebook.com/TheDragonBoxHawaii/

20.     Defendant Dragon Box and Defendant Paul Christoforo control participate in, exercise control over, or benefit from the infringement of Defendant John Doe.

21.     Previously identified as Defendant Doe 2, First Plaintiff has discovered that Defendant Jev Balubar is the individual at IP address 204.210.105.89 who shared a copy and thereby infringed the Plaintiff's copyrighted First Work on 7/5/2017.

22.     The Internet Service Provider for IP address 204.210.105.89 is Charter Communications.

23.     Charter Communications indicated that the named subscriber for IP address 204.210.105.89 was Arlene Balubar from 6/7/2017 01:17 to 8/3/2017 (UTC).

24.     The daughter of the named Subscriber of the Internet service of IP address 204.210.105.89 indicated that her brother (the Defendant Jev Balubar) used a hardware device such as the Kodi device with add-on software to watch movies.

25.     Upon information and belief, the Kodi box mentioned by the Defendant Jev Balubar's sister was a Dragon Box device.

20-003H

26.     The Dragon Box device was sold or given to Defendant Jev Balubar by Defendant John Doe.

27.     Defendant John Doe assisted with the set up and thereby installation of the Dragon Box device at the residence of Defendant Jev Balubar.

28.     Defendant John Doe configured the Dragon Box device to run a BitTorrent client application.

29.     The Defendant Jev Balubar used the Dragon box device to copy and share copies of the First Work.

30.     The Defendant Jev Balubar installed or had installed a BitTorrent client application on his mobile device so that his family and Defendant Jev Balubar could watch pirated content.

31.     The Defendant Jev Balubar has been observed sharing nearly 13 contents at the IP address.

32.     Second Plaintiff has discovered that Defendant Jev Balubar shared a copy and thereby infringed the Second Work on 7/21/2017.

33.     The Defendant Jev Balubar used the Dragon Box device to copy and share copies of the Second Work.

34.     The Defendant Jev Balubar used the Dragon Box device to stream the First and Second Works without Plaintiffs' permission.

20-003H

35.     Defendant Jev Balubar knowingly and willingly used this IP address to illegally republish and illegally distribute copies of the Plaintiffs' Works to an unknown number of other individuals over the Internet.

36.     Defendant Jev Balubar is either a direct or contributory infringer all as more particularly described below.

37.     Upon information and belief, each and all of the Defendants Dragon Box, Defendant Paul Christoforo and Defendant John Doe jointly and severally contributed to, and/or participated in, the infringing activity as set forth below and each of Defendants Dragon Box, Defendant Paul Christoforo and Defendant John Doe was acting within the course and scope of employment, partnership and/or agency with the other, and each of the Defendants Dragon Box, Defendant Paul Christoforo and Defendant John Doe is jointly and severally liable for the injuries to Plaintiffs.

38.     Upon information and belief, the fictitiously named Defendants captioned hereinabove as John Doe was in some manner responsible or legally liable for the actions, damages, events, transactions and circumstances alleged herein. The true names and capacities of such fictitiously named Defendant, whether individual, corporate, associate, or otherwise are presently unknown to the Plaintiffs and Plaintiffs will amend this Complaint to assert the true names and capacities of such fictitiously named Defendant when the same have been ascertained.

20-003H

## IV.   JOINDER

39.   Pursuant to Fed. R. Civ. P. 20(a)(1), each of the Plaintiffs are properly joined because, as set forth in detail above and below, the Plaintiffs assert: (a) a right to relief arising out of the same transaction, occurrence, or series or transactions, namely the use of one or more BitTorrent client and streaming applications, at least some of which were installed at the Dragon Box device, at the Defendant Jev Balubar's IP address; and (b) that there are common questions of law and fact.

40.   Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly joined because, as set forth in more detail below, the Plaintiffs assert: (a) a right to relief arising out of the same transaction, occurrence, or series or transactions, namely the use of BitTorrent and streaming client applications at the Defendant Jev Balubar's IP address; and (b) there are common questions of law and fact.

## V.   FACTUAL BACKGROUND

### A.  The Plaintiffs Own the Copyrights to the Works

41.   The Plaintiff ME2 is the owner of the copyright in the First Work.  The First Work is the subject of a copyright registration (Registration Number PA 1-998-057), and this action is brought pursuant to 17 U.S.C. § 411.  *See* Exhibit "2".

42.   The Plaintiff Venice is the owner of the copyright in the Second Work, which is the subject of copyright registration (Registration Number PA 2-039-391)

20-003H

for the motion picture, and this action is brought pursuant to 17 U.S.C. § 411.  *See,* Exhibit "3".

43.    The Works are motion pictures currently offered for sale in commerce.

44.    Defendants had notice of Plaintiffs' rights through at least the credits indicated in the content of the motion picture which bore a proper copyright notice.

45.    Defendants also had notice of Plaintiffs' rights through general publication and advertising associated with the motion picture, and packaging and copies, each of which bore a proper copyright notice.

### B. The Defendant Dragon Box contributes to the Defendant Jev Balubar's and others' Infringement of the Plaintiffs' Copyrights

46.    Defendant Dragon Box advertises itself as being easy for customers to install and operate. According to Defendant Dragon Box's website, Customers need only (1) plug it in; (2) connect to Network; and (3) Enjoy.

47.    Defendant Dragon Box markets Dragon Box as a device that gives their customers direct access to "Free movies (In Theaters)".

48.    The Dragon Box device primarily utilizes two types of software programs. The first is a software media player called "Kodi."  Kodi is a third-party "open source" media player, meaning that it operates with many different programs and file formats. Kodi is recognized as the most popular media player for supporting the second type of software program Dragon Box device relies on which are referred

20-003H

to as "addons." An addon is a software program (or client application) that runs in conjunction with an underlying software program (like Kodi) to provide functionality over and above the functionality that the underlying software provides.

49.     The Dragon Box device allows Defendant Dragon Box's customers to access "unlimited" "free" content through the use of the "Dragon Media" software application. The Dragon Media application provides Defendant Dragon Box's customers with a customized configuration of the Kodi media player and a curated selection of the most popular addons for accessing infringing content.  These addons are designed and maintained for the overarching purpose of scouring the Internet for illegal sources of copyrighted content and returning links to that content. When Dragon Box customers click those links, those customers receive unauthorized streams of popular motion pictures and television shows.

50.     From the customer's perspective, Dragon Box works as follows. First, the customer boots up a newly delivered Dragon Box unit. Dragon Box presents the customer with a menu that includes the "DRAGON MEDIA" software application.

51.     When a customer selects "DRAGON MEDIA" for the first time, the device prompts the customer to download the "DragonBox" software. After clicking through the guided "Media Setup," the device downloads and installs the latest version of Dragon Media.

52.     Once the Dragon Media software application has been downloaded and

11

installed onto the Dragon Box device, the customer is presented a multi-page home screen that presents the customer with categories to select. These categories include "Sports," "4Kids," "Videos," "IPTV," and "TV Shows," among others.

53.    Defendant Dragon Box provides customers with numerous addons as part of their suite of Dragon Media addons to access all of the "Unlimited Shows, Movies, [and] Live Sporting events."

54.    Defendant Dragon Box's customers use Dragon Box for intended and unquestionably infringing purposes, most notably to obtain immediate, unrestricted, and unauthorized access to unauthorized streams of Plaintiffs' Copyrighted Works.

55.    Covenant is an addon for accessing infringing content. It is one of the suite of addons that Dragon Box includes with the download and installation of the Dragon Media software application.

56.    The customer opens Covenant by clicking the shortcut button on the Dragon Box home menu. Once opened, the customer sees a welcome screen, which features 15 different categories and search options. These curated categories include selections of obviously popular and copyrighted content, such as "Box Office," "In Theaters," and "New Movies".

57.    Once the customer selects a particular title to stream, he or she has access to dozens of links to sources of unauthorized content.

58.    The customer also has access to information about the sources of the

12

unauthorized content, including whether the source streams content in high-definition or standard-definition resolution.

59.     When the customer selects a source for a motion picture, Dragon Box presents a user-friendly interface with buttons to fast-forward, rewind, play, pause, stop, and turn on closed-captioning, among others. With just a few clicks, the customer can access an infringing stream of a motion picture that can be seen legally only in theatres.

60.     Defendant Dragon Box promotes the use of Dragon Box for overwhelmingly, if not exclusively, infringing purposes, and that is how their customers use Dragon Box.

61.     BitTorrent client applications such as Popcorn Time can be installed as an addon for accessing infringing content.

62.     Defendant Dragon Box urges Dragon Box customers to stream infringing content. Defendants' promotional materials inform customers that "[y]ou get Free pay per view. Free movies still in theaters in HD and 3D. Sports Packages, Kids content & All content is free." Defendant Dragon Box tells Dragon Box customers that they can "Watch What You Want When You Want With Dragon Box and Save $$" and access "Free Movies (In Theater)" "Free TV Shows commercial free from season one" and "so much more content":

63.     Defendant Dragon Box operates a Facebook page directed towards

Hawaii customers: https://www.facebook.com/TheDragonBoxHawaii/.

64.    In this Facebook page, Defendant Paul Christoforo commented, "Best product on the market! Get one if you don't have one!"

65.    Defendants Dragon Box and Paul Christoforo also use their Facebook pages to announce software updates and advertise the availability of infringing content that is not yet available outside of theaters.

66.    Defendants Dragon Box and Paul Christoforo promote Dragon Media Inc.'s regular updates to the Dragon Media software application.

67.    Dragon Media Inc. also provides Dragon Box customers with access to "premium" addons. For example, Dragon Media Inc. issues every Dragon Box customer a user login and password to access "Area-51 IPTV." Using the Area-51 IPTV addon, Dragon Box customers can stream live television channels, including premium cable television networks and sports networks.

68.    The commercial value of Defendants' Dragon Box business depends on high-volume use of unauthorized content through the Dragon Box devices. Defendants promise their customers reliable and convenient access to all the content they can stream and customers purchase Dragon Box devices based on Defendants' apparent success in delivering infringing content to their customers.  Defendants Dragon Box and Christoforo solicit individuals like John Doe to serve as authorized distributors and resellers of Dragon Box devices.

20-003H

69.     Defendant Dragon Box's revenues grow based on increase in demand for the Dragon Box devices. The demand for Dragon Box is driven by Defendant Dragon Box's promise of free access to infringing content. These promises depend on and form an integral part of an ecosystem built on the mass infringement of Copyrighted Works, including Plaintiffs'.

70.     Defendants Dragon Box and Paul Christoforo are vicariously liable for copyright infringement as they had the right and the power to control both directly and pursuant to distribution servicing agreements, the activities of Defendant John Doe, as well as the infringing activities of others, and these Defendants Dragon Box and Paul Christoforo received a direct financial benefit, financial advantages, and/or other economic consideration from the infringing activities of John Doe. Thus, all Defendants Dragon Box and Paul Christoforo are liable for profits resulting from the copyright infringement in the United States.

### C. The Defendant Jev Balubar Used BitTorrent To Infringe the Plaintiffs' Copyrights

71.     BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

72.     The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from

20-003H

a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

### 1. Defendant Jev Balubar Installed or had installed a BitTorrent Client onto his Computer

73.   A BitTorrent "Client" is a software program that implements the BitTorrent Protocol.  There are numerous such software programs which can be directly downloaded from the Internet.

74.   Once installed on a computer, the BitTorrent "Client" serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

75.   Defendant Jev Balubar installed or had installed a BitTorrent Client onto his computer, particularly his Dragon Box.

### 2. The Initial Seed, Torrent, Hash and Tracker

76.   A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

77.   The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

16

20-003H

78.     The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

79.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

80.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

81.     The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

82.     The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Works, on them and facilitates the exchange of data among the computers.

83.     Depending on the BitTorrent Client, a tracker can either be a dedicated

20-003H

computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

### 3. Torrent Sites

84.   "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol.  There are numerous torrent websites.

85.   Upon information and belief, Defendant Jev Balubar went to a torrent site to upload and download Plaintiffs' copyrighted Works.

### 4. Uploading and Downloading a Work Through a BitTorrent Swarm

86.   Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Works) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

87.   The BitTorrent protocol causes the initial seed's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

88.   Once a peer receives a piece of the computer file, here a piece of the copyrighted Works, it starts transmitting that piece to the other peers.

89.   In this way, all of the peers and seeders are working together in what is called a "swarm."

20-003H

90.     Here, Defendant Jev Balubar as a peer member participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

91.     In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

92.     Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

*5. The Plaintiffs' Computer Investigators Identified the Defendant Jev Balubar's IP Addresses as Participants in a Swarm That Was Distributing the Plaintiffs' Copyrighted Works*

93.     The Plaintiffs retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the internet to reproduce, distribute, display or perform the Plaintiffs'

20-003H

copyrighted Works.

94.     MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

95.     MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of: SHA1: B4A81D27B29589DD704A84498780ED183F12EB69     (the     "Unique     Hash Number") for the First Work.

96.     The IP addresses, Unique Hash Number, and hit dates contained on Exhibit "1" accurately reflect what is contained in the evidence logs, and show: (1) that Defendant Jev Balubar had copied a piece of the First Plaintiff's copyrighted; (2) the Work identified by the Unique Hash Number.

97.     The Defendant Jev Balubar's computer used the identified IP addresses to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

98.     MEU's agent analyzed each BitTorrent "piece" distributed by each IP address listed on Exhibit "1" and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the First Work.

99.     MEU's agent viewed the Work side-by-side with the digital media file

20-003H

that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

100.   MEU's agent noted that a tracker computer was directing to the IP address of Defendant Jev Balubar as having particular pieces of the Second Work.

## VI. FIRST CLAIM FOR RELIEF
### (Copyright Infringement)

101.   Plaintiffs re-allege and incorporates by reference the allegations contained in each of the foregoing paragraphs.

102.   Plaintiffs are the copyright owners of the Works which each contains an original work of authorship.

103.   By using the BitTorrent protocol and a BitTorrent Client and the processes described above, Defendant Jev Balubar copied the constituent elements of the registered Works that are original.

104.   The Plaintiffs did not authorize, permit, or provide consent to the Defendant Jev Balubar to copy, reproduce, redistribute, perform, or display their Works.

105.   As a result of the foregoing, Defendant Jev Balubar violated the Plaintiffs' exclusive right to: (A) Reproduce the Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501; (B) Redistribute copies of the Works to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501; (C) Perform the copyrighted Works, in violation of 17 U.S.C. §§

106(4) and 501, by showing the Works' images; and, (D) Display the copyrighted Works, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Works non-sequentially and transmitting said display of the Works by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display.)

106.   Defendant Jev Balubar's infringement was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

107.   By engaging in the infringement alleged in this Complaint, the Defendant Jev Balubar deprived not only the producers of the Works from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of each film, numerous owners of local theaters and retail outlets in Hawaii and their employees, and, ultimately, the local economy.   The Defendant Jev Balubar's misconduct therefore offends public policy.

108.   The Plaintiffs have suffered damages that were proximately caused by the Defendant Jev Balubar's copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## VII. SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement)

109.   Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

20-003H

110.   Defendants Dragon Box, Paul Christoforo and John Doe have actual knowledge of third parties' infringement of Plaintiffs' exclusive rights under the Copyright Act.

111.   Defendants Dragon Box, Paul Christoforo and John Doe intentionally induce the infringement of Plaintiffs' exclusive rights under the Copyright Act, including infringement of Plaintiffs' exclusive right to publicly perform their Copyrighted Works. As intended and encouraged by Defendants, the Dragon Box device connects customers to unauthorized online sources that stream Plaintiffs' Copyrighted Works and/or make copies of Plaintiffs Copyrighted Works via the BitTorrent client application.  The operators of these source repositories directly infringe Plaintiffs' public performance rights by providing unauthorized streams or copies of the works to the public, including to Dragon Box customers. These operators, or others operating in concert with them, control the facilities and equipment used to store and stream the content, and they actively and directly cause the content to be streamed or copied when Dragon Box customers click on a link for the content.

112.   Defendants Dragon Box, Paul Christoforo and John Doe induce the aforementioned acts of infringement by supplying the physical devices that facilitate, enable, and create direct links between Dragon Box customers and the infringing operators of the streaming services, and by actively inducing, encouraging

23

and promoting the use of their devices for blatant copyright infringement.

113.   Defendant John Doe, under the control and direction of Defendants Dragon Box and Paul Christoforo, induced the aforementioned acts of infringement by installing the BitTorrent client application on the Dragon Box of Defendant Jev Balubar, thereby actively inducing, encouraging and promoting the use of the device for blatant copyright infringement.

114.   Defendants Dragon Box, Paul Christoforo and John Doe's intentional inducement of the infringement of Plaintiffs' rights in each of their Copyrighted Works constitutes a separate and distinct act of infringement.

115.   Defendants Dragon Box, Paul Christoforo and John Doe's inducement of the infringement of Plaintiffs' Copyrighted Works is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of the Plaintiffs.

116.   Defendants Dragon Box, Paul Christoforo and John Doe had actual or constructive knowledge of Defendant Jev Balubar's and other's infringement of Plaintiffs' exclusive rights under the Copyright Act.  Defendants Dragon Box, Paul Christoforo and John Doe's knowingly and materially contribute to such infringing activity.

117.   Defendants Dragon Box, Paul Christoforo and John Doe knowingly and materially contribute to the infringement of Plaintiffs' exclusive rights under the Copyright Act, including infringement of Plaintiffs' exclusive right to publicly

20-003H

perform their works. Defendants Dragon Box, Paul Christoforo and John Doe design and promote the use of the Dragon Box device to connect customers to unauthorized online sources that stream Plaintiffs' Copyrighted Works. The operators of these source repositories directly infringe Plaintiffs' public performance rights by providing unauthorized streams of the works to the public, including to Dragon Box customers. The operators, or others operating in concert with them, control the facilities and equipment used to store and stream the content, and they actively and directly cause the content to be streamed when Dragon Box customers click on a link for the content.

118.   Defendants Dragon Box, Paul Christoforo and John Doe knowingly and materially contribute to the aforementioned acts of infringement by supplying the physical devices that facilitate, encourage, enable, and create direct links between Dragon Box customers and infringing operators of the streaming services, and by actively encouraging, promoting, and contributing to the use of their devices for blatant copyright infringement.

119.   Defendants Dragon Box, Paul Christoforo and John Doe' knowing and material contribution to the infringement of Plaintiffs' rights in each of their Copyrighted Works constitutes a separate and distinct act of infringement.

120.   Defendants Dragon Box, Paul Christoforo and John Doe' knowing and material contribution to the infringement of Plaintiffs' Copyrighted Works is willful,

20-003H

intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiffs.

121.   As a direct and proximate result of the infringement to which Defendants Dragon Box, Paul Christoforo and John Doe knowingly and materially contribute, Plaintiffs are entitled to damages and Defendants Dragon Box, Paul Christoforo and John Doe' profits in amounts to be proven at trial.

122.   Defendants Dragon Box and Paul Christoforo had the right, authority, and the ability to control or supervise the actions, failures, and omissions of their fellow Defendant John Doe, and other persons and entities, including their subsidiaries, affiliates, and distributors, which violated Plaintiffs' copyright in the Works.

123.   Defendants Dragon Box and Paul Christoforo obtained a direct financial interest, financial advantage, and/or economic consideration from the infringement in Hawaii as a result of their infringing actions in the United States.

124.   By participating in the BitTorrent swarm with others, Defendant Jev Balubar induced, caused or materially contributed to the infringing conduct of others.

125.   The Plaintiffs did not authorize, permit, or provide consent to the Defendant Jev Balubar inducing, causing, or materially contributing to the infringing conduct of others.

20-003H

126.   Defendant Jev Balubar knew or should have known that the other BitTorrent users in a swarm with him were directly infringing the Plaintiffs' copyrighted Work by copying constituent elements of the registered Work that are original.   Indeed, Defendant Jev Balubar directly participated in and therefore materially contributed to infringing activities of others.

127.   Defendant Jev Balubar's infringement was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

128.   By engaging in the contributory infringement alleged in this Complaint, the Defendant Jev Balubar deprived not only the producer of the Works from income that could have been derived when these films were shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of these films, numerous owners of local theaters and retail outlets in Hawaii and their employees, and, ultimately, the local economy.   The Defendant Jev Balubar's misconduct therefore offends public policy.

129.   The Plaintiffs have suffered damages that were proximately caused by the Defendant Jev Balubar's contributory copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

WHEREFORE, the Plaintiffs respectfully requests that this Court:

(A) permanently enjoin each Defendant from continuing to directly infringe and/or contributing to infringement of the Plaintiffs' copyrighted Works;

20-003H

(B) impound all Dragon Box devices in Defendants' possession, custody, or control, and any and all documents or other records in Defendants' possession, custody, or control relating to Defendants Dragon Box, Paul Christoforo and John Doe's contribution to and inducement of the infringement of Plaintiffs' Copyrighted Works.

(C) order that Defendant Jev Balubar delete and permanently remove the torrent files relating to the Plaintiffs' copyrighted Works from each of the computers under Defendant Jev Balubar's possession, custody, or control;

(D) order that Defendant Jev Balubar delete and permanently remove the copy of the Works Defendant Jev Balubar has on the computers under the Defendant Jev Balubar's possession, custody, or control;

(E) award the Plaintiffs' statutory damages per Work pursuant to 17 U.S.C. § 504-(a) and (c);

(F) award the Plaintiffs their reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(G) grant the Plaintiffs any and all other and further relief that this Court deems just and proper.

DATED: Kailua-Kona, Hawaii, January 15, 2018.

20-003H

CULPEPPER IP, PLLC


/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiffs
ME2 Productions, Inc.
Venice PI, LLC

20-003H