CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-5737 Kuakini Highway, Suite 102
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 322-3389
Facsimile:   (202) 204-5181
E-Mail:      kculpepper@culpepperip.com

Attorney for Plaintiffs
ME2 Productions, Inc. and
Venice PI, LLC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ME2 Productions, Inc., and<br>Venice PI, LLC<br><br>　　　　　　　Plaintiffs,<br>　　vs.<br><br>DRAGON MEDIA, INC. d/b/a<br>Dragon Box,<br>PAUL CHRISTOFORO,<br>NAINOA BETTENCOURT d/b/a<br>Dragon Box Hawaii and Shi Shi Nai<br>Nai Entertainment, and<br>JASON BARNHART d/b/a/ Dragon<br>Box-Hawaii Kai<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No.: 1:17-cv-00320-JMS-RLP**<br><br>(Copyright)<br><br>**FOURTH AMENDED<br>COMPLAINT; EXHIBITS 1-10;<br>CERTIFICATE OF SERVICE**<br><br><br>**(1) CONTRIBUTORY<br>　　COPYRIGHT<br>　　INFRINGEMENT** |

## FOURTH AMENDED COMPLAINT

First Plaintiff ME2 Productions, Inc. (hereafter: "ME2") and Second Plaintiff

Venice PI, LLC (hereafter: "Venice") (collectively "Plaintiffs") file this Fourth

20-003H

Amended Complaint against Defendants Dragon Media, Inc. d/b/a Dragon Box (hereafter: "Dragon Box"), Paul Christoforo, and now identified Nainoa Bettencourt d/b/a Dragon Box Hawaii and Shi Shi Nai Nai Entertainment (hereafter: "Nainoa Betterncourt") and Jason Barnhart d/b/a/ Dragon Box-Hawaii Kai (hereafter: "Jason Barnhart") (collectively "Defendants") and allege as follows:

## I.      NATURE OF THE ACTION

1.      This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the Copyright Act").

2.      The Plaintiffs allege that Defendants are liable for contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501.

## II.      JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.      Defendants Dragon Box, Paul Christoforo, Nainoa Betterncourt and Jason Barnhart solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction.

5.      Defendants Dragon Box and Paul Christoforo have indirectly or directly engaged Nainoa Betterncourt and Jason Barnhart, as well as many others,

20-003H  17-320

as official resellers and authorized distributors of Dragon Box devices and affiliates of Dragon Media Inc in this District.  Particularly, upon information and belief, Defendants Dragon Box and Paul Christoforo have engaged Nainoa Betterncourt and Jason Barnhart, both individuals residing in Hawaii, as official resellers and authorized distributors of Dragon Box devices. As such, Defendants Dragon Box and Paul Christoforo have sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over them.

6.     Each of Defendants Nainoa Betterncourt and Jason Barnhart either resides in, solicits, transacts, or is doing business within this jurisdiction, and has committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that his acts would cause injury in this jurisdiction.  As such, Defendants Nainoa Betterncourt and Jason Barnhart have sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over him.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) the Defendants Nainoa Betterncourt and Jason Barnhart reside, and therefore can be found, in this State.  Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendants Nainoa Betterncourt, Jason Barnhart, and their agents reside or may be found in this District.

3

### III.   PARTIES

### A.   The First Plaintiff, ME2 Productions, LLC

8.      The Plaintiff ME2 Productions Inc. (ME2) is a corporation organized
and existing under the laws of the State of Nevada.

9.      ME2 is an affiliate of Millennium Funding, Inc., a production company
and   distributor   of   a   notable   catalog   of   major   motion   pictures.
(www.millenniumfilms.com).

10.     ME2 is the owner of the copyright for the motion picture in the Work
"*Mechanic: Resurrection*" (hereafter: the "First Work") a major motion picture
released in 2016 as shown in Exhibit "1".

11.     The First Work is the sequel to the highly successful 2011 film "*The
Mechanic*". The First Work is a major production with notable actors, a national
advertising campaign and a significant opening release in over 2,200 screens,
promoted in part by its web site: http://www.mechanic.movie.

### B.   The Second Plaintiff, Venice PI, LLC.

12.     The Plaintiff Venice PI, LLC ("Venice") is a limited liability company
organized under the laws of California with principal offices in Los Angeles,
California.

13.     Venice is an affiliate of Voltage Pictures, a production company with
a notable catalog of major motion pictures.  (www.voltagepictures.com).

4

20-003H  17-320

14.     Venice is the owner of the copyright for the motion picture in the Work *"Once Upon a Time in Venice"*, (hereafter: the "Second Work") a major motion picture released in June of 2017 as shown in Exhibit "2".

15.     The Second Work is about a private investigator who must follow a bizarre and comic path to recover his stolen dog.

## C.   The Defendants

16.     Defendant Dragon Media Inc. is a corporation duly incorporated under the laws of the State of California with its principal place of business at 2740 Circulo Santiago, Carlsbad, CA 92008. Defendant Dragon Media Inc. does business under the name Dragon Box and operates an interactive website http://www.thedragonbox.com/ as of January 15, 2018.

17.     Defendant Paul Christoforo is the president, owner, and operator of Dragon Media Inc and, upon information and belief, a resident of Carlsbad, California.

18.     Upon information and belief, Defendant Paul Christoforo so dominates Dragon Media Inc. that it has become merely the alter ego to Defendant Paul Christoforo.

19.     Defendant Paul Christoforo unduly influences and governs Dragon Media Inc.

20-003H  17-320

20.     There is such a unity of interest between Dragon Media Inc. and Paul Christoforo that the individuality, or separateness, of Paul Christoforo and Dragon Media Inc. has ceased and the facts are such that an adherence to the fiction of the separate existence of the Dragon Media Inc. from Paul Christoforo would, under the particular circumstances, sanction a fraud or promote injustice.

21.     Defendant Paul Christoforo controls, participates in, exercises control over, or benefits from the infringement of Defendants Dragon Media Inc., Naino Bettencourt and Jason Barnhart as discussed below.

22.     Defendant Naino Bettencourt is an authorized distributor of Dragon Box devices and an affiliate of Dragon Media Inc. residing in Hawaii.  *See* Exhibit "3".

23.     Defendant Naino Bettencourt does or has done business under the name Shi Shi Nai Nai Entertainment.

24.     Defendant Naino Bettencourt uses the Facebook user name "Nai Nai".

25.     Defendant Naino Bettencourt used the Facebook user name Nai Nai to promote the Dragon Box as shown in Exhibits "3" and "4".

26.     Defendant Nainoa Bettencourt does or has done business under the name "The Dragon Box Hawaii".

27.     Defendant Naino Bettencourt controlled or controls the Facebook user name and Facebook site "The Dragon Box Hawaii" as shown in Exhibit "5".

6

28.     Defendant Naino Bettencourt controlled or controls the Instagram user name "@dragon_box_hawaii" as shown in Exhibit "6".

29.     At the Facebook site of The Dragon Box Hawaii the Dragon box was advertised as on sale for $150 off retail as shown in Exhibit "7".

30.     Defendant Jason Barnhart resides in Hawaii and is an authorized reseller of Dragon Box devices and an affiliate of Dragon Media Inc. as shown in Exhibit "8".

31.     Defendant Jason Barnhart does or has done business under the name JB Dragon Box-Hawaii Kai.

32.     Defendant Jason Barnhart uses or used the Facebook user name "JBHawaiiKaiDragonBox".

33.     Defendant Jason Barnhart used the Facebook user name JBHawaiiKaiDragonBox to promote the Dragon Box.  *See* Exhibit "9".

34.     Defendant Jason Barnhart used the email account "DragonBoxHawaiiKai@gmail.com" to sale the Dragon Box. *See* Exhibit "9".

35.     Upon information and belief, Defendants Jason Barnhart and Nainoa Bettencourt purchase Dragon Box devices from Defendant Dragon Box, Defendant Paul Christoforo and/or entities authorized by Defendant Dragon Box and resale these Dragon Box devices to their Hawaii customers.

20-003H  17-320

36.     Defendant Dragon Box and Defendant Paul Christoforo control participate in, exercise control over, or benefit from the sales of Dragon Box devices by Defendants Jason Barnhart and Nainoa Bettencourt.

37.     The Hawaii customers are motivated to purchase the Dragon Box because of the promotions of Defendants of the Dragon Box as an infringing device.

38.     Defendants benefit from the infringement of the Works by their Hawaii customers.

39.     Upon information and belief, each and all of the Defendants jointly and severally contributed to, and/or participated in, the infringing activity as set forth below and each of Defendants was acting within the course and scope of employment, partnership and/or agency with the other, and each of the Defendants is jointly and severally liable for the injuries to Plaintiffs.

## IV.   JOINDER

40.     Pursuant to Fed. R. Civ. P. 20(a)(1), each of the Plaintiffs are properly joined because, as set forth in detail above and below, the Plaintiffs assert: (a) a right to relief arising out of the same transaction, occurrence, or series or transactions, namely the use of one or more streaming applications installed at the Dragon Box device sold by Defendants; and (b) that there are common questions of law and fact.

41.     Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly joined because, as set forth in more detail below, the Plaintiffs assert: (a) a

20-003H  17-320

right to relief arising out of the same transaction, occurrence, or series or transactions, namely the addons preinstalled on the Dragon Box for streaming Plaintiffs' Works ; and (b) there are common questions of law and fact.

## V.    FACTUAL BACKGROUND

### A.  *The Plaintiffs Own the Copyrights to the Works*

42.    The Plaintiff ME2 is the owner of the copyright in the First Work.  The First Work is the subject of a copyright registration (Registration Number PA 1-998-057), and this action is brought pursuant to 17 U.S.C. § 411.  *See* Exhibit "1".

43.    The Plaintiff Venice is the owner of the copyright in the Second Work, which is the subject of copyright registration (Registration Number PA 2-039-391) for the motion picture, and this action is brought pursuant to 17 U.S.C. § 411.  *See,* Exhibit "2".

44.    The Works are motion pictures currently offered for sale in commerce.

45.    Defendants had notice of Plaintiffs' rights through at least the credits indicated in the content of the motion picture which bore a proper copyright notice.

46.    Defendants also had notice of Plaintiffs' rights through general publication and advertising associated with the motion picture, and packaging and copies, each of which bore a proper copyright notice.

### B. *The Defendants contribute to their Hawaii customers' Infringements of the Plaintiffs' Copyrights*

47.    Defendant Dragon Box advertises itself as being easy for customers to install and operate. According to Defendant Dragon Box's website, Customers need only (1) plug it in; (2) connect to Network; and (3) Enjoy.

48.    Defendant Dragon Box markets the Dragon Box as a device that gives their customers direct access to "Free movies (In Theaters)".

49.    The Dragon Box device primarily utilizes two types of software programs. The first is a software media player called "Kodi."  Kodi is a third-party "open source" media player, meaning that it operates with many different programs and file formats. Kodi is recognized as the most popular media player for supporting the second type of software program Dragon Box device relies on which are referred to as "addons." An addon is a software program that runs in conjunction with an underlying software program (like Kodi) to provide functionality over and above the functionality that the underlying software provides.

50.    The Dragon Box device allows Defendant Dragon Box's customers to access "unlimited" "free" content through the use of the "Dragon Media" software application. The Dragon Media application provides Defendant Dragon Box's customers with a customized configuration of the Kodi media player and a curated selection of the most popular addons for accessing infringing content.  These addons are designed and maintained for the overarching purpose of scouring the Internet for illegal sources of copyrighted content and returning links to that content. When

20-003H  17-320

Dragon Box customers click those links, those customers receive unauthorized streams of popular motion pictures and television shows.

51.     From the customer's perspective, Dragon Box works as follows. First, the customer boots up a newly delivered Dragon Box unit. Dragon Box presents the customer with a menu that includes the "DRAGON MEDIA" software application.

52.     When a customer selects "DRAGON MEDIA" for the first time, the device prompts the customer to download the "DragonBox" software. After clicking through the guided "Media Setup," the device downloads and installs the latest version of Dragon Media.

53.     Once the Dragon Media software application has been downloaded and installed onto the Dragon Box device, the customer is presented a multi-page home screen that presents the customer with categories to select. These categories include "Sports," "4Kids," "Videos," "IPTV," and "TV Shows," among others.

54.     Defendant Dragon Box provides customers with numerous addons as part of their suite of Dragon Media addons to access all of the "Unlimited Shows, Movies, [and] Live Sporting events."

55.     Defendant Dragon Box's customers use Dragon Box for intended and unquestionably infringing purposes, most notably to obtain immediate, unrestricted, and unauthorized access to unauthorized streams of Plaintiffs' Copyrighted Works.

56.     Covenant is an addon for accessing infringing content. It is one of the

20-003H  17-320

suite of addons that Dragon Box includes with the download and installation of the Dragon Media software application.

57. The customer opens Covenant by clicking the shortcut button on the Dragon Box home menu. Once opened, the customer sees a welcome screen, which features 15 different categories and search options. These curated categories include selections of obviously popular and copyrighted content, such as "Box Office," "In Theaters," and "New Movies".

58. Once the customer selects a particular title to stream, he or she has access to dozens of links to sources of unauthorized content.

59. The customer also has access to information about the sources of the unauthorized content, including whether the source streams content in high-definition or standard-definition resolution.

60. When the customer selects a source for a motion picture, Dragon Box presents a user-friendly interface with buttons to fast-forward, rewind, play, pause, stop, and turn on closed-captioning, among others. With just a few clicks, the customer can access an infringing stream of a motion picture that can be seen legally only in theatres.

61. Defendants promote the use of Dragon Box for overwhelmingly, if not exclusively, infringing purposes, and that is how their customers use Dragon Box.

62. Defendant Dragon Box urges Dragon Box customers to stream

20-003H 17-320

infringing content. Defendants' promotional materials inform customers that "[y]ou get Free pay per view. Free movies still in theaters in HD and 3D. Sports Packages, Kids content & All content is free." Defendant Dragon Box tells Dragon Box customers that they can "Watch What You Want When You Want With Dragon Box and Save $$" and access "Free Movies (In Theater)" "Free TV Shows commercial free from season one" and "so much more content".

63.   Defendant Naino Bettencourt operates a Facebook page directed towards Hawaii customers: https://www.facebook.com/TheDragonBoxHawaii/.

64.   In this Facebook page, Defendant Paul Christoforo commented, "Best product on the market! Get one if you don't have one!"

65.   In this Facebook page, Defendant Naino Bettencourt states: "Unlimited TV shows"; "Unlimited Movies"; "Unlimited Major sports" and "Unlimited Live TV" at HD, 1080P, 4K resolution.

66.   Defendants Dragon Box and Paul Christoforo also use their Facebook pages to announce software updates and advertise the availability of infringing content that is not yet available outside of theaters.

67.   Defendants Dragon Box and Paul Christoforo promote Dragon Media Inc.'s regular updates to the Dragon Media software application.

68.   Defendant Naino Bettencourt also uses the Facebook page The Dragon Box Hawaii and his Face Book page Nai Nai to announce software updates and

promote the Dragon Box. Exhibit "5".

69.     Defendant Jason Barnhart also uses his Facebook pages to promote the Dragon Box as providing "Free Movies (In Theater)", "Free TV Shows commercial free" and " Free Live TV and So Much More".Dragon Media Inc. also provides Dragon Box customers with access to "premium" addons. For example, Dragon Media Inc. issues every Dragon Box customer a user login and password to access "Area-51 IPTV." Using the Area-51 IPTV addon, Dragon Box customers can stream live television channels, including premium cable television networks and sports networks.

70.     The commercial value of Defendants' Dragon Box business depends on high-volume use of unauthorized content through the Dragon Box devices. Defendants promise their customers reliable and convenient access to all the content they can stream and customers purchase Dragon Box devices based on Defendants' apparent success in delivering infringing content to their customers.  Defendants Dragon Box and Christoforo solicit individuals like Nainoa Bettencourt and Jason Barnhart to serve as authorized distributors and resellers of Dragon Box devices.

71.     Defendant Nainoa Bettencourt solicits individuals to serve as authorized resellers of Dragon Box devices.  *See* Exhibit "10".

72.     Defendant Dragon Box's revenues grow based on increase in demand for the Dragon Box devices. The demand for Dragon Box is driven by Defendant

Dragon Box's promise of free access to infringing content. These promises depend on and form an integral part of an ecosystem built on the mass infringement of Copyrighted Works, including Plaintiffs'.

73.    Defendants Dragon Box and Paul Christoforo are vicariously liable for copyright infringement as they had the right and the power to control both directly and pursuant to reseller and distribution servicing agreements, the activities of Defendants Nainoa Bettencourt and Jason Barnhart, as well as the infringing activities of others, and Defendants Dragon Box and Paul Christoforo received a direct financial benefit, financial advantages, and/or other economic consideration from the infringing activities of Nainoa Bettencourt and Jason Barnhart. Thus, all Defendants Dragon Box and Paul Christoforo are liable for profits resulting from the copyright infringement in the United States.

74.    Defendant Nainoa Bettencourt is vicariously liable for copyright infringement as he had the right and the power to control both directly and pursuant to reseller agreements, the infringing activities of others, and Defendant Nainoa Bettencourt received a direct financial benefit, financial advantages, and/or other economic consideration from the infringing activities of his licensed resellers. Thus, Defendant Nainoa Bettencourt is liable for profits resulting from the copyright infringement in the United States.

20-003H  17-320

## VI. FIRST CLAIM FOR RELIEF
### (Contributory Copyright Infringement based upon Inducement)

75.     Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

76.     Plaintiffs are the copyright owners of the Works which each contains an original work of authorship.

77.     Defendants have actual knowledge of third parties' infringement of Plaintiffs' exclusive rights under the Copyright Act.

78.     Defendants intentionally induce the infringement of Plaintiffs' exclusive rights under the Copyright Act, including infringement of Plaintiffs' exclusive right to publicly perform their Copyrighted Works. As intended and encouraged by Defendants, the Dragon Box device connects customers to unauthorized online sources that stream Plaintiffs' Copyrighted Works.  The operators of these source repositories directly infringe Plaintiffs' public performance rights by providing unauthorized streams of the works to the public, including to Dragon Box customers. These operators, or others operating in concert with them, control the facilities and equipment used to store and stream the content, and they actively and directly cause the content to be streamed when Dragon Box customers click on a link for the content.

79.     Defendants induce the aforementioned acts of infringement by supplying the physical devices that facilitate, enable, and create direct links between

Dragon Box customers and the infringing operators of the streaming services, and by actively inducing, encouraging and promoting the use of their devices for blatant copyright infringement.

80.     Defendants intentional inducement of the infringement of Plaintiffs' rights in each of their Copyrighted Works constitutes a separate and distinct act of infringement.

81.     Defendants inducement of the infringement of Plaintiffs' Copyrighted Works is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of the Plaintiffs.

82.     Defendants Dragon Box and Paul Christoforo had the right, authority, and the ability to control or supervise the actions, failures, and omissions of Defendants Naino Bettencourt and Jason Barnhart, and other persons and entities, including their subsidiaries, affiliates, and distributors, which violated Plaintiffs' copyright in the Works.

83.     An agency relationship exists or existed between Defendant Dragon Box and each of Defendants Naino Bettencourt and Jason Barnhart due to at least a reseller and/or distributor agreement.

84.     Defendants Dragon Box and Paul Christoforo obtained a direct financial interest, financial advantage, and/or economic consideration from the infringement in Hawaii as a result of their infringing actions in the United States.

85.     Defendant Naino Bettencourt had the right, authority, and the ability to control or supervise the actions, failures, and omissions of other persons and entities such as his licensed resellers, including their subsidiaries, affiliates, and distributors, which violated Plaintiffs' copyright in the Works.

86.     Defendant Naino Bettencourt obtained a direct financial interest, financial advantage, and/or economic consideration from the infringement in Hawaii as a result of his infringing actions in the United States.

87.     Defendants' actions are a direct and proximate cause of the infringements of Plaintiffs' Works.

## V. SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement based upon Material Contribution)

88.     Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

89.     Defendants have actual or constructive knowledge of infringement of Plaintiffs' exclusive rights under the Copyright Act.  Defendants knowingly and materially contribute to such infringing activity.

90.     Defendants knowingly and materially contribute to the infringement of Plaintiffs' exclusive rights under the Copyright Act, including infringement of Plaintiffs' exclusive right to publicly perform their works. Defendants Dragon Box and Paul Christoforo design and promote the use of the Dragon Box device to

connect customers to unauthorized online sources that stream Plaintiffs' Copyrighted Works. Defendants Naino Bettencourt and Jason Barnhart promote the use of the Dragon Box device to connect customers to unauthorized online sources that stream Plaintiffs' Copyrighted Works. The operators of these source repositories directly infringe Plaintiffs' public performance rights by providing unauthorized streams of the works to the public, including to Dragon Box customers. The operators, or others operating in concert with them, control the facilities and equipment used to store and stream the content, and they actively and directly cause the content to be streamed when Dragon Box customers click on a link for the content.

91.     Defendants knowingly and materially contribute to the aforementioned acts of infringement by supplying the physical devices that facilitate, encourage, enable, and create direct links between Dragon Box customers and infringing operators of the streaming services, and by actively encouraging, promoting, and contributing to the use of their devices for blatant copyright infringement.

92.     Defendants knowing and material contribution to the infringement of Plaintiffs' rights in each of their Copyrighted Works constitutes a separate and distinct act of infringement.

93.     Defendants knowing and material contribution to the infringement of Plaintiffs' Copyrighted Works is willful, intentional, and purposeful, and in disregard

19

20-003H  17-320

of and with indifference to the rights of Plaintiffs.

94.     As a direct and proximate result of the infringement to which Defendants knowingly and materially contribute, Plaintiffs are entitled to damages and Defendants profits in amounts to be proven at trial.

95.     Defendants Dragon Box and Paul Christoforo had the right, authority, and the ability to control or supervise the actions, failures, and omissions of Defendants Naino Bettencourt and Jason Barnhart, and other persons and entities, including their subsidiaries, affiliates, and distributors, which violated Plaintiffs' copyright in the Works.

96.     Defendants Dragon Box and Paul Christoforo obtained a direct financial interest, financial advantage, and/or economic consideration from the infringement in Hawaii as a result of their infringing actions in the United States.

97.     Defendant Naino Bettencourt had the right, authority, and the ability to control or supervise the actions, failures, and omissions of his licensed resellers, and other persons and entities, including their subsidiaries, affiliates, and distributors, which violated Plaintiffs' copyright in the Works.

98.     Defendant Naino Bettencourt obtained a direct financial interest, financial advantage, and/or economic consideration from the infringement in Hawaii as a result of his infringing actions in the United States.

99.     Defendants' actions are a direct and proximate cause of the

20-003H  17-320

infringements of Plaintiffs' Works.

WHEREFORE, the Plaintiffs respectfully requests that this Court:

(A) permanently enjoin each Defendant from continuing to contribute to infringement of the Plaintiffs' copyrighted Works;

(B) impound all Dragon Box devices in Defendants' possession, custody, or control, and any and all documents or other records in Defendants' possession, custody, or control relating to Defendants contribution to and inducement of the infringement of Plaintiffs' Copyrighted Works.

(C) award the Plaintiffs' actual damages and Defendants' profits in such amount as may be found; alternatively, at Plaintiffs' election, for maximum statutory damages per Work pursuant to 17 U.S.C. § 504-(a) and (c);

(D) award the Plaintiffs their reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(E) grant the Plaintiffs any and all other and further relief that this Court deems just and proper.

DATED: Kailua-Kona, Hawaii, April 19, 2018.


CULPEPPER IP, LLLC


/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiffs
21

20-003H  17-320

22

20-003H  17-320